**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:12-CV-00682-TBR**

KENTUCKIANS FOR THE
COMMONWEALTH, et al.,                                                      PLAINTIFFS,

v.

U.S. ARMY CORPS OF ENGINEERS, et al.,                          DEFENDANTS.

**MEMORANDUM OPINION & ORDER**

Plaintiffs, Kentuckians for the Commonwealth ("KFTC") and the Sierra Club, brought this action seeking a declaration that the U.S. Army Corps of Engineers ("the Corps") violated the Clean Water Act ("CWA") and the National Environmental Policy Act ("NEPA") in issuing a permit to Leeco, Inc. ("Leeco"), authorizing the corporation to mine-through and fill several unnamed tributaries of Stacy Branch and Yellow Creek. Plaintiffs request injunctive relief and seek judicial review of the agency's decision under the Administrative Procedure Act ("APA").

Currently before the Court is Plaintiffs' Motion to Consider Evidence Outside the Record. (DN 28.) Both the Corps and Leeco have responded in opposition, (DN 36 and 35, respectively), and Plaintiffs have replied. (DN 38.) This matter is ripe for adjudication. For the following reasons, Plaintiffs' motion is DENIED.

**FACTUAL BACKGROUND**

Because of the limited nature of the issue at hand, a full recitation of the facts is unnecessary here, and the Court will address only those relevant to the disposition of the instant motion.

## I. Procedural Background

Plaintiffs initiated this lawsuit in October 17, 2012, after the Corps' Louisville District Office issued Permit No. LRL-2007-217 ("Permit" or "Stacy Branch Permit") and its accompanying Permit Evaluation and Decision Document ("Decision" or "Decision Document") to Intervening Defendant Leeco, pursuant to Section 404(a) of the CWA, 33 U.S.C. § 1344(a). This motion pertains to Count IV of Plaintiffs' Complaint, in which they assert that the Corps violated the CWA Section 404(b)(1) Guidelines ("Guidelines" or "Section 404(b)(1) Guidelines") by issuing the Permit, which they contend will cause or contribute to violations of water quality standards and significant degradation of waters of the United States.[1] The Permit authorizes Leeco to discharge fill materials into streams that qualify as "waters of the United States" under the CWA and accompanying regulations. The discharges relate to Leeco's plan to construct one hollow fill, one sediment control pond, and various "mine throughs" on unnamed tributaries of Stacey Branch and Yellow Creek of Carr Creek, located in Knott and Perry Counties, Kentucky, as part of its nearby surface coal mining operations.

After originally applying for a permit under CWA § 404 in 2007 and engaging in an "enhanced coordination process" with the Department of the Army, the Environmental Protection Agency ("EPA"), and the U.S. Department of the Interior ("DOI"), Leeco submitted a revised permit application on July 19, 2011. The revised configuration proposed construction of a single, large hollow fill and sediment pond. The new design would "impact"—Defendants' term—or "destroy"—Plaintiffs' term—a total stream length of 18,268 linear feet, or 3.5 miles.

---

[1] The Section 404(b)(1) Guidelines prohibit issuance of any permit that "will cause or contribute to significant degradation of the waters of the United States." 40 C.F.R. § 230.10(c). As part of this determination, the Corps must evaluate the "nature and degree of effect that the proposed discharge will have, both individually and cumulatively, on the structure and function of the aquatic ecosystem and organisms." *Id.* § 230.11(e). If the Corps' determination that a permit will not cause significant degradation relies on compensatory mitigation measures, such "must be commensurate with the amount and type of impact that is associated with [the] permit." 33 C.F.R. § 332.3(a)(1). Count IV of Plaintiffs' Complaint alleges that the Stacy Branch Permit violates these requirements.

[2]

The Corps determined that any impacts on stream functions resulting from the Permit would be offset by Leeco's Compensatory Mitigation Plan, in which Leeco agreed to restore 3,617 linear feet of streams at the Spring Branch Mitigation Site in Wolfe County, Kentucky. Leeco also proposed to pay $752,047.50 of "in-lieu fees" to the Kentucky Department of Fish and Wildlife Stream and Mitigation Trust Fund for restoration projects in the vicinity of the project area. The amount of fees to be paid is based on a calculation of the "ecological integrity units" associated with the Permit's stream impacts.

Due to the revisions, the Corps issued an addendum to the Public Notice on August 5, 2011, with a 14-day comment period extending through August 19, 2011. Prior to the issuing of the addendum to the Public Notice, Plaintiffs had begun filing requests to obtain Leeco's permit application, proposed mitigation plan, and supporting materials under the Freedom of Information Act ("FOIA"). Beginning on July 11, 2011, and continuing through August 22, 2011, Plaintiffs made weekly FOIA requests for these items. (*See* DN 38-2.) Although the Corps acknowledged receipt of these requests each time they were made, (DN 38-3), the agency did not otherwise respond until producing the administrative record in September and December 2012. (DN 28-8.)

Because of this delay and the "cursory discussion included in the Public Notice", Plaintiffs contend their ability to comment on the Stacy Branch Permit during the relevant comment period "was severely limited" and they had "no opportunity" to submit certain evidence into the record because they only learned the details of Leeco's plans and the Corps' decision after the Permit issued.[2] (Pls.' Mem., 5 & 7-8, DN 28-1.) As a result, Plaintiffs request that the Court consider a number of extra-record documents, as well as testimony based on those documents. Defendants

---

[2] Plaintiffs did submit comments during the 14-day comment period. On August 8, 2011, on behalf of the Sierra Club, Margaret Janes submitted a 62-pages of comments with 65 attached exhibits. (DN 21-3.)

[3]

oppose this request, arguing that it is inappropriate and, if granted, will lead to unfair delay and exceed the scope of this Court's review under the APA.

## II.   Plaintiffs' Proposed Extra-Record Evidence

Plaintiffs seek to "present expert testimony and supporting exhibits addressing stream ecology, proper scientific assessment of stream functions, the feasibility of stream creation, and the challenges of monetizing ecological benefits." (Pls.' Mem. at 5.) Before beginning its discussion, the Court will briefly outline the proposed evidence, which constitutes more than 400 pages of additional documents.

First, Plaintiffs seek to introduce evidence they contend will aid the Court in evaluating the Corps' reliance on the Eastern Kentucky Stream Assessment Protocol ("EKSAP") to predict the value of Leeco's mitigation efforts, including Corps-prepared analyses. Second, Plaintiffs seek to introduce testimony by Professor Margaret Palmer, Director of National Socio-Environmental Synthesis Center with 29 years of experience in research and teaching on aquatic ecosystems, particularly in stream ecosystem science and restoration ecology. Palmer is anticipated to testify that the Corps overlooked important stream functions when it approved the Stacy Branch Permit based on Leeco's proposed mitigation plan. Palmer will also testify that the Corps has overlooked problems with past restoration efforts and that it overvalued the ecological benefits of Leeco's mitigation plan. Third, Plaintiffs request the Court consider approximately 25 studies cited by Professor Palmer in her declaration that address stream ecology assessments and proper stream restoration approaches. Plaintiffs contend these are necessary for the Court to properly evaluate the Corps' determination that there will no significant degradation after Leeco's mitigation plan is complete.

Finally, Plaintiffs seek to introduce evidence that they argue is necessary for the Court to evaluate the component of the mitigation plan that incorporates in-lieu fee payments to the Kentucky Stream and Wetland Mitigation Trust Fund. This evidence includes a number of documents, as well as testimony of an unnamed "ecological economist," who will explain the Trust Fund's operations and identify problems associated with monetizing ecological benefits that they contend the Corps overlooked.

## DISCUSSION

This Court reviews the Corps' decision to issue the Stacy Branch Permit under the APA. The APA states "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under the "arbitrary and capricious standard, the standard is narrow and the court should not substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Generally, the APA limits the scope of judicial review to a review of the administrative record only. 5 U.S.C. § 706 ("[T]he court shall review the whole record or those parts of it cited by a party"); *Fla. Power & Light Co. v. Lorton*, 470 U.S. 729, 734 (1985); *Camp v. Pitts*, 411 U.S. 138, 142 (1973). The "focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Kroger Co. v. Reg'l Airport Auth. of Louisville & Jefferson Cnty.*, 286 F.3d 382, 387 (6th Cir. 2002) (quoting *Camp*, 411 U.S. at 142). Thus, courts' review of the administrative record is usually confined to the "materials compiled by the agency that were before the agency at the time the decision was made." *Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997) (alterations and internal quotation marks omitted).

Despite this general rule, however, a "reviewing court may consider materials supplementary to the administrative record in order to determine the adequacy of the government agency's decision, even when the court's scope of review is limited to the administrative record." *United States v. Akzo Coatings*, 949 F.2d 1409, 1427 (6th Cir. 1991). The Sixth Circuit has indicated that a reviewing court "may consider additional evidence as either background information to aid the court's understanding, or to determine if the agency examined all relevant factors or adequately explained its decision," *id.* at 1428, or "when an agency deliberately or negligently excludes certain documents" from the administrative record. *Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997). The decision as to whether to consider evidence outside the administrative record is discretionary. *Id.* The Sixth Circuit cautions a Court considering expanding its review beyond the administrative record that it "must be careful not to allow such evidence to change the character of the hearing from one of review to a trial de novo." *Akzo Coatings*, 949 F.2d at 1428. Thus, "[s]uch situations are generally considered to be "exceptional circumstances." *Charter Twp. of Van Buren v. Adamkus*, 188 F.3d 506, 1999 WL 701924 at *4 (6th Cir. Aug. 30, 1999).

The Court finds it unnecessary to consider the evidence proposed by Plaintiffs. First, the proposed additional evidence is voluminous, consisting of over 400 pages of documentation and testimony from two experts. While it is true that consideration of evidence outside of the record does not automatically turn a record review into a trial *de novo*, the Court fears granting Plaintiffs' motion would do just that. The amount of extra-record evidence Plaintiffs seek to introduce is at odds with much of the case law they cite in support of their request. *See*, *e.g.*, *Akzo Coatings*, 949 F.2d at 1427 (Court erred in declining to consider a single affidavit submitted before the court entered a final judgment on a CERCLA consent decree); *Nat'l Steel*

*Corp., Great Lakes Div. v. U.S. Coast Guard*, 995 F. Supp. 773, 777-78 (E.D. Mich. 1997) (considering a single affidavit that gave a technical explanation of material already in the record "[b]ased on the unique circumstances" of the case).

Secondly, as Defendants point out and Plaintiffs admit, "Plaintiffs have already alerted the Corps to the deficiencies of its general approach through their comments." (Pls.' Mem. at 13.) Although Plaintiffs contend the new evidence is necessary to "clarify and explain how the record information applies to decisions made on the Stacy Branch Permit in particular, which were only made public after the close of the comment period," (*Id.*), the Court is confident that counsel can explain how the general deficiencies noted in Plaintiffs' comments are present in the Stacy Branch Permit without the additional requested documentation.[3] *See Charter Twp.*, 1999 WL 701924 at *4 (upholding a court's determination that proposed evidence was cumulative and unnecessary to aid its review). At this time, the Court feels consideration of Plaintiffs' proposed evidence would detract from its ability render its decision in this case rather than aid it. Therefore, the Court will deny Plaintiffs' motion.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Consider Evidence Outside the Record (DN 28), is DENIED.

CC: Counsel

---

[3] The Court notes that Plaintiffs' 2011 comments includes extensive quotations from a declaration by Professor Palmer in similar case, many of which are nearly identical to her criticisms in the extra-record declaration Plaintiffs seek that the Court consider.