UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:12-CV-00682-TBR

KENTUCKIANS FOR THE
COMMONWEALTH, et al.,                                             PLAINTIFFS,

v.

U.S. ARMY CORPS OF ENGINEERS, et al.,                             DEFENDANTS.

## MEMORANDUM OPINION

Plaintiffs Kentuckians for the Commonwealth and Sierra Club have filed a Notice of Appeal (Docket No. 72) from this Court's August 23, 2013 Memorandum Opinion (Docket No. 70) and Order and Judgment (Docket No. 71). The Court upheld the U.S. Army Corps of Engineers' July 26, 2012 decision to issue a § 404 permit under the Clean Water Act, 33 U.S.C. § 1344, to Leeco, Inc., an intervenor in the action. The permit authorizes Leeco to discharge dredged or fill material into tributaries of Stacy Branch and Yellow Creek of Carr Creek, which are "waters of the United States" under the Clean Water Act and accompanying regulations. These activities are part of Leeco's nearby surface coal mining operations.

The Court's Memorandum Opinion of August 23, 2013, denied Plaintiffs' motions for summary judgment and granted Defendants' motions for summary judgment in part (Docket No. 70). It determined that the Corps adequately analyzed the issues before it prior to issuing the permit and that the Corps did not act arbitrarily and/or capriciously in issuing the permit (Docket No. 70 at 37). The Court rejected Plaintiffs' argument that the Corps violated the National Environmental Policy Act (NEPA) and the

1

Clean Water Act (CWA) by not considering evidence of risk to public health from coal mining activities. The Court also rejected Plaintiffs' argument that the Corps errantly determined that the destruction of streams at the mine site will not significantly degrade waters of the United States.

Plaintiffs moved for an Injunction Pending Appeal under Federal Rule of Civil Procedure 62(c) to direct the U.S. Army Corps of Engineers to suspend Leeco's § 404 permit and prohibit Leeco from dredging or filling waters of the United States while Plaintiffs' appeal is pending (Docket No. 73). On August 30, 2013, the Court entered a temporary injunction directing the Army Corps of Engineers to temporarily suspend Leeco's § 404 Permit LRL-2007-217 (Docket No. 74). The Court now considers whether to extend this injunction. For the reasons that follow, Plaintiffs' motion is GRANTED.

## DISCUSSION

### I. Plaintiffs' Motion for an Injunction Pending Appeal should be granted based on the required balancing test.

Federal Rule of Civil Procedure 62(c) authorizes this Court to grant an injunction during the pendency of an appeal.[1] This is an "extraordinary remedy" that "should be granted sparingly." *Roghan v. Block*, 590 F. Supp. 150, 152 (W.D. Mich. 1984).

Four factors govern the issuance of injunctions pending appeal: (1) the likelihood that the party seeking the injunction will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent an injunction; (3) the prospect that others will be harmed if the court grants the injunction; and (4) the public

---

[1] "When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper from the security of the rights of the adverse party." Fed. R. Civ. P. 62(c).

interest in granting the injunction. *Service Emps. Int'l Union Local 1 v. Husted*, 698 F.3d 341 (6th Cir. 2012) (citing *Mich. Coal. Of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). The four factors "are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id.*, citing *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).[2]

The strength of the likelihood of success on the merits that movants must demonstrate is "inversely proportional to the amount of irreparable harm that will be suffered" if the injunction does not issue. *Baker v. Adams County/Ohio Valley School Bd.*, 310 F.3d 927, 928 (6th Cir. 2002). To justify an injunction, the movant must demonstrate "at least serious questions going to the merits and "irreparable harm that decidedly outweighs the harm that will be inflicted on others" if an injunction is granted. *Id.* (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)).

**a.     Plaintiffs have not established a sufficient likelihood of success on the merits.**

Plaintiffs argue that there are "serious questions going to the merits" on appeal that are sufficient to satisfy the first factor (Docket No. 73-2 at 4). "The first factor is, conceptually, the most difficult to apply. Logic dictates that a court will seldom deny an injunction, then turn around and grant one pending appeal, finding, in part, that the party seeking injunctive relief is likely to prevail on appeal, *i.e.* that it is likely that the court erred in denying injunctive relief." *Dayton Christian Schools v. Ohio Civil Rights*

---

[2] Defendant urges the Court to abandon the *Husted* standard and instead adopt the U.S. Supreme Court's position as articulated in *Winter v. Nat. Res. Defense Council*, 555 U.S. 7 (2008). *Winter* held that movants seeking a preliminary injunction must establish each element independently. Therefore, the movant's failure to establish any one element requires the Court to deny injunctive relief, regardless of the weight of the other factors. However, *Husted* confirmed the validity of the Sixth Circuit's pre-*Winter* case law four years after *Winter* itself. Accordingly, this Court will apply *Husted*.

*Com'n*, 604 F. Supp. 101, 102 (S.D. Ohio 1984). Acknowledging this logical dilemma, the Court remains convinced that appellate review will confirm the soundness of its August 23, 2013 decision. Furthermore, Plaintiffs have pointed to no relevant law that was not considered and applied by the Court in its opinion. Accordingly, Plaintiffs have not shown a strong or substantial likelihood of success on the merits.

Notwithstanding this fact, the Court will discuss the remaining factors to determine if they nevertheless counsel toward granting relief during the appeal's pendency. "A number of courts have held that when equitable factors strongly favor interim relief, the court is not required to find that ultimate success by the movant is a mathematical probability' and 'may grant a stay even though its own approach may be contrary to the movant's view of the merits.'" *A & B Steel Shearing & Processing, Inc. v. U.S.*, 174 F.R.D. 65 (E.D. Mich. 1997) (citing *Thiry v. Carlson*, 891 F.Supp. 563, 466 (D. Kan. 1995)). The movants need not demonstrate that it is more likely than not that they will succeed on appeal. Should the remaining three factors strongly favor granting interim relief, a court may grant an injunction pending appeal if the movant has made a substantial case on the merits. *Dayton Christian Schools*, 604 F. Supp. at 103. Further, much of the decision and findings of the Court were based on the deferential standard of review mandated on some claims. In short, the opinion is not a total de novo review. Subsequent courts court could apply the standard in a more or less deferential manner and still be compliant with it.

**b.     Plaintiffs will be irreparably harmed if denied interim relief.**

The second factor queries whether the movant will be irreparably harmed absent interim relief. This factor directs in favor of granting the injunction. The Court's August

4

23, 2013 Memorandum Opinion allows Leeco to immediately proceed with its activities, including construction of a foundation for the planned valley fill (Docket No. 72-3 at 6). Leeco remains free to engage in other mining and stream-filling activities that may affect the three miles of tributary streams to Stacy Branch and Yellow Creek pursuant to its § 404 permit (Id.).

The Court finds that Plaintiffs will be irreparably harmed if an injunction is not granted for the appeal's pendency. Not only may Leeco's activities disturb Plaintiffs' members who work, live, and recreate near these sites, they may also destroy the streams themselves. "[T]here is no adequate remedy at law to compensate the public for the harm caused by the disposal of fill material into waters of the United States or in its wetlands." *U.S. v. Malibu Beach, Inc.*, 711 F. Supp. 1301, 1313 (D.N.J. 1989). "Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.,* irreparable." *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 545 (1987).

Defendants point to Leeco's required compensatory mitigation payment to the Kentucky Department of Fish and Wildlife Resources Stream and Mitigation Trust Fund and other mitigation projects, arguing that they alleviate any harm to Plaintiffs (Docket No. 76 at 5-6). However, the injury in question is not only to the environment generally, but to specific streams and populations in precise locations. Because environmental injury is sufficiently likely, the balance of harms favors the issuance of an injunction to protect the environment.

Leeco has offered to restrict its use of the § 404 permit to approximately 2,900 feet of waters pending appeal, reducing the amount of mining and stream impacts

5

(Docket No. 77 at 14-15). Leeco represents that such limited filling would "prevent[] substantial economic harm to itself and others" (Id. at 14). However, this proposal does not prevent permanent damage to the waters at issue—it only limits it. As discussed above, the enduring and irreparable harms that Plaintiffs would suffer do not allow for such compromise.

c. **Plaintiffs' harm outweighs that of Defendants.**

Third, the Court considers the harm suffered by defendants if the injunction is issued. The United States asserts no harm (Docket No. 76 at 6).

Leeco argues that the issuance of an injunction would cause it to incur substantial economic harm. If its Section 404 permit is suspended, it will be forced to either refrain from any mining at the Stacy Branch site altogether, or, if it does conduct such mining, to incur unrecoverable expenses in avoiding disturbance to jurisdictional streams (Docket No. 77 at 14). Leeco further argues that an injunction would reduce both the amount of wages and taxes that it would otherwise pay (Id.). It says that an injunction would lessen the mine's value, as the company would permanently lose access to much of the on-site coal and that the mine's life would be reduced (Id.). Leeco points to costs it would incur from idling and restarting operations and from fulfilling its sale commitments with more expensive coal. The company finally argues that an injunction would diminish its ability to respond to a potential rise in the coal market (Id).

Such economic loss to Leeco, either real or speculative, and the resultant effect on its employees is certainly regrettable. However, "[p]otential monetary damage does not constitute irreparable harm." *Baker v. Adams County/Ohio Valley School Bd.*, 310 F.3d 927, 930 (6th Cir. 2002). "Money can be earned, lost, and earned again; a valley once

6

filled is gone." *Ohio Valley Envtl. Coal. V. U.S. Army Corps of Eng'rs*, 528 F.Supp.2d 625, 632 (S.W.D. Va. 2007). Accordingly, the harm suffered by Leeco is outweighed by that of the Plaintiffs.

### d. The public has a strong interest in maintaining a balance between economic growth and environmental protection.

Finally, the Court must assess the public interest in the injunction. "There is frequently a tension between environmental protection and immediate economic gain." *Ohio Valley Envtl. Coal.*, 528 F.Supp.2d 625, 633. In legislation including the Clean Water Act (CWA) and the National Environmental Policy Act (NEPA), Congress seeks to preserve a balance between these two competing goods. Among Congress's goals in drafting NEPA was to "declare a national policy which will encourage productive and enjoyable harmony between man and his environment." 42 U.S.C. § 4321. The relevant CWA provisions were designed to prevent dredged or fill material from causing an unacceptable environmental impact. *See Ohio Valley Envtl. Coal. V. U.S. Army Corps of Eng.*, 479 F.Supp.2d 607, 623-24 (S.D.W. Va. 2007). Both NEPA and the CWA contain various mechanisms to safeguard environmental resources and ensure that environmental concerns are weighed. *Ohio Valley Envtl. Coal.*, 528 F.Supp.2d at 633.

The public has a robust interest in the integrity of the permitting process, which ensures that congressional objectives are enforced. *Id.* Suspending Leeco's projects during the appeal's pendency ensures that they will withstand the requisite scrutiny before streams are permanently harmed. Accordingly, such an injunction comports with the public interest. *See S. Fork Band Council of W. Shoshone of Nevada v. U.S. Dep't of Interior*, 588 F.3d 718, 728 (9th Cir. 2009) ("Congress's determination in enacting NEPA

was that the public interest requires careful consideration of environmental impacts before major federal projects may go forward. Suspending a project until that consideration has occurred thus comports with the public interest.").

Leeco argues that the public interest favors allowing activities under validly issued permits, including coal production (Docket No. 77 at 15). This endeavor may well be a worthy one, but it is nonetheless subject to the congressionally mandated balance discussed above. Because the project could cause permanent damage to the streams in question, the Court finds that the balance of public interest weighs toward Plaintiffs.

### II. Leeco's request for bond is denied.

Leeco estimates that over fifteen months, the average time to resolve an appeal in the Sixth Circuit, it would incur over $1 million in unrecoverable costs (Docket No. 77 at 16). On this ground, it argues that the Sierra Club should be required to post an initial bond of at least $1 million, plus potential increases for Leeco's additional expenses and lost revenues (Docket No. 77 at 17). Of course, Leeco was facing this same scenario if the Court had found for Plaintiffs in this action.

Although one seeking a preliminary injunction or temporary restraining order is generally required to post a bond as security before the injunction will issue, Rule 65(c)[3] of the Federal Rules of Civil Procedure affords the Court "wide discretion in the matter of requiring security." *National Resources Defense Council v. Morton*, 337 F. Supp. 167, 168 (D.D.C. 1971). A well-established exception to Rule 65(c)'s bond provision exists where "the purposes of the security bond conflict with those of the Act" at issue. *See Div.*

---
[3] "No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any part who is found to have been wrongfully enjoined or restrained. No such security shall be required of the United States or of an officer or agency thereof." Fed. R. Civ. Proc. 65(c).

*No. 1, Detroit, Broth. of Locomotive Eng'rs v. Consol. Rail Corp.*, 844 F.2d 1218, 1227. "Moreover, special precautions to ensure access to the courts must be taken where Congress has provided for private enforcement of a statute." *People of State of Cal. Ex rel. Van De Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1325-26 (citing *Friends of the Earth v. Brinegar*, 518 F.2d 322, 323 (9th Cir. 1975) and *Morton*, 337 F.Supp. at 168-69, both discussing NEPA). In the case at bar, Plaintiffs seek to vindicate the public interest served by NEPA. Therefore, no bond is required.

Leeco argues that this case is distinguishable from others that have relaxed bonding requirements for preliminary injunctions in NEPA cases. It differentiates the case at bar from *Natural Res. Def. Council v. Morton*, 337 F. Supp. 167 (D.D.C. 1971), where the plaintiffs were allowed to post only a nominal bond. *Morton* noted that "it would be a mistake to treat a revenue loss to the Government the same as pecuniary damage to a private party." *Id.* at 169. Leeco argues that because an injunction would cause a private party to incur loss, the Court should require a substantial bond (Docket No. 77 at 17). However, this argument is not convincing. Although preliminary injunctions based on NEPA are often directed at government authorities, such injunctions no doubt affect the interests of private parties, including those with a financial stake in the permit at issue. Consequently, Leeco's argument fails.

Leeco further distinguishes *Morton* based on the contrasting financial positions of its movants and Sierra Club. (Docket No. 77 at 17-19). *Morton* observed that to require the movants, three nonprofit organizations, to post a substantial bond would effectually preclude them from obtaining judicial review. 337 F.Supp. 167, 169. By contrast, it argues that Sierra Club is a "big business" with highly paid executives, a tax exempt

foundation, and substantial annual revenues (Docket No. 77 at 18).  However, the Court agrees with Plaintiffs that the availability of the public interest exception does not depend upon a movant's showing of need (Docket No. 79 at 13).  Rather, the exception is designed to facilitate private enforcement of public rights.  Accordingly, no bond is required.

## CONCLUSION

Where environmental injury "is sufficiently likely . . . the balance of harms will usually favor the issuance of an injunction to protect the environment."  *Amoco Prod. Co.*, 480 U.S. at 545.  Accordingly, the equities balance in favor of granting an injunction.  Plaintiffs have demonstrated that they will be irreparably injured if no injunction is granted and the streams are destroyed.  Were the Court of Appeals to reverse this Court and rule in favor of Plaintiffs, Plaintiffs could receive no full and fair remedy for the harm they suffered in the interim.

Accordingly, the Court GRANTS Plaintiffs' motion for injunctive relief.  The Court will issue an order directing the U.S. Army Corps of Engineers to suspend Leeco's § 404 Permit LRL-2007-217 and enjoining Leeco from dredging or filling waters of the United States under that permit for the pendency of Plaintiffs' appeal.